Our first case of the afternoon is People of the State of Illinois v. Calvin Smith, 416-0308. For the appellate, Mr. Wessel, and for the appellate, Ms. Legler, you may proceed. May it please the Court, Counsel, my name is Joel Wessel. I am with the Office of the State Appellate Defender, and I represent Calvin Smith. Your Honor, in Miller v. Alabama, the U.S. Supreme Court held that only the rarest of juvenile homicide offenders may be sentenced to life in prison. The Court explained that the sentence is only appropriate where the Court considers youth and its attendant circumstances and makes a finding that the juvenile defendant is permanently incorrigible beyond all possibility of rehabilitation. The rule from Miller is now retroactive, and in 2016, the Illinois Supreme Court extended Miller's reasoning to juvenile sentenced to de facto life, meaning a term of years that has the same practical effect as a natural life sentence. In this case, Calvin was 17 years old when he was sentenced to a 65-year sentence. Calvin will be released from prison at the age of 81. By all intents and purposes, this is a de facto life sentence. Calvin would not only need to outlive the life expectancy of a prisoner, which is 64 years, but he would need to outlive the life expectancy of the general United States population, which is age 79. Now, in People v. Holman, the Illinois Supreme Court established the framework for evaluating collateral challenges implicating Miller. And the Court echoed Miller. The Court said that a life sentence is only appropriate where the sentencing court considers Miller factors, age, family and home environment, the degree of participation in the crime, the juvenile's prospects for rehabilitation, and where the Court's reasoning conveys a finding that the defendant was permanently incorrigible. Now here, Calvin is requesting a new sentencing hearing for two distinct reasons. The first is that the sentencing court failed to properly consider one of the Miller factors, and that is the juvenile's prospects for rehabilitation. The facts of this case are in stark contrast to the cases cited in the opening brief. In People v. Holman, this factor was properly considered because the sentencing court considered the PSI, which included a comment from the probation officer that the defendant is beyond rehabilitation. In People v. Croft, the sentencing court heard testimony from a reverend and the defendant about his potential for rehabilitation. And in People v. Stafford, a case from this court, the sentencing court heard dozens of attempts by the states of Iowa and Illinois to rehabilitate the defendant. Those facts are not in this record. Calvin had no prior adjudication or conviction, so there was no previous attempt by any state, Iowa or Illinois, to rehabilitate him. There was no testimony at the sentencing hearing or evidence at the trial that conveyed that he had the potential for rehabilitation. This just does not exist in this record. The state is asking this court to infer from the court's language at sentencing that this factor was properly considered. But in Holman, the Illinois Supreme Court held that we must evaluate these claims on a cold record. And we should not be inferring into the court's language, especially for something as critical as a Millery sentencing hearing. Now, there's another reason why Calvin requires a new sentencing hearing. And that is because the record below does not indicate that the trial court believed Calvin to be one of the rarest of juvenile homicide offenders, that he was permanently incorrigible beyond all possibility of rehabilitation. Again, the facts of this case are unlike those cited in the opening brief. In People v. Holman, Your Honors, the juvenile defendant committed eight homicides, including the murder of an 83-year-old woman. In that case, not only did the probation officer note that he had no predilection for rehabilitation, but the sentencing court noted that he was beyond all possibility of rehabilitation. In People v. Croft, where the defendant participated in the gang rape and murder of a 16-year-old girl who was stabbed over 40 times, had broken bones, and suffered injuries consistent with the underside of a car, there the sentencing court found this crime to be heinous, evil, absolutely heartless. The appellate court looked at the trial court's reasoning and said, yes, that is a conveyance of permanent incorrigibility. And in People v. Stafford, from this court, Your Honors, the defendant went into the victim's home, stabbed her 45 times. And in that case, the sentencing court found that this crime was too senseless and too vicious, despite the repeated attempts by Iowa and Illinois to rehabilitate David Stafford. And this court determined that that reasoning was a finding of permanent incorrigibility. And in this case, we don't have that. We don't have any indication from the court that Calvin is one of these rare cases, one of these rare juveniles, where there is no chance that he can ever be rehabilitated. That reasoning does not exist below. Do you think the trial court was aware that your client knew Mike Patel? Yes. And that Mike Patel was kind of the fixture in that neighborhood, and that Mike Patel had fronted him merchandise and let him pay for it later? Yes. That reflects a certain cold-bloodedness. Random is not the right word, but it's not an unknown victim. It's somebody that you know who's extended a courtesy to you. If the trial court had mentioned that, would it fulfill the factor? Your Honor, I would argue that that is precisely why Miller requires new sentencing hearings. That is, I think, a quintessential juvenile act, knowing someone well and still deciding to fail to think about the consequences, fail to think about everything, and just make an impulsive, terrible decision. And I think that's what happened here. And even what you said, Your Honor, is true. The court still must make a determination that Calvin's crime represented such depravity that he can never achieve rehabilitation. How about the trial court saying it was similar to an assassination or an execution? The court did say that. The court also said right after that that that was not a consideration in its sentencing determination. But even if that was a consideration, Your Honors, that the fact that it resembled an execution doesn't mean that Calvin is beyond all hope, all possibility of rehabilitation. That, according to Miller, Montgomery, and Holman, So those are the magic words that the court must say? No, Your Honor. They don't have to say that the defendant is permanently incorrigible, but they must convey reasoning that he's beyond all rehabilitation. And that's what Holman noted, that the defendant was beyond rehabilitation. That's what the appellate court noted in Croft when it said that this person is evil, this person is heinous. And that is what happened in David Stafford, where after stabbing her 45 times, the court held that this was too heinous and too vicious, despite the repeated attempts over and over by the states of Iowa and Illinois to rehabilitate him. As I understand your argument, it would be wrong for this court to infer this incorrigibility based upon the trial court statement that he considered this similar to an assassination. Well, Your Honor, the court said it was not considering that factor. The court said this is as close to an assassination I'm asking you, can we draw an inference from the court's use of that language? I don't think so. I think Holman requires us to look at the cold record and to make a determination on the trial court's findings at sentencing, and specifically for the permanent incorrigibility. Holman requires the trial court to make that determination. That determination was not made in this case. There was language that the defendant committed a horrible act. That's absolutely true. It was a senseless act that one can usually see out of senseless juvenile crimes. He knew this man. He knew he could identify him, yet he still chose to rob him. I can't think of a more quintessential juvenile murder than that. That's an aggravating factor, isn't it? That you choose to shoot someone to prevent them from testifying against you. I don't know if it's statutory, but it sounds like it might be a proper consideration, Your Honor. If this court has no further questions, then we would ask that Calvin's case be remanded for a new sentencing hearing, and that his actual innocence claim be advanced to the third stage for an evidentiary hearing. Thank you, Your Honor. Thank you, Ken. We'll hear from you on rebuttal. Ma'am, please. Ma'am, please. Good afternoon, Your Honor, counsel. My name is Erin Wilson-Legler, and I appear on behalf of the state. As this court is aware, this case involves two separate motions, relief to file successive post-conviction petitions. Based on counsel's argument, are we addressing both in this argument, or are the arguments separate? I assume that counsel was standing on his brief for the second argument. You can certainly address it if you wish to. Thank you, Your Honor. Backing up for a moment, as this court is aware, this case involves two separate successive post-conviction petitions. One alleges newly discovered evidence, and that petition proceeded to the second stage of proceedings before being dismissed. The other alleged cause and prejudice based on the Miller v. Alabama argument was dismissed at the first stage. All issues in this appeal are reviewed in open. And I'd like to begin by discussing the motion that was filed first in time, the 2014 successive post-conviction petition, and that is the motion that is addressed in Part 2 of the briefing. To proceed to the third stage, petitioner was required to establish a colorable claim of actual innocence based on his newly discovered evidence. This means that the evidence must, of course, be newly discovered, it must be material, and it must be conclusive, such that it raises the probability that it is more likely than not that no reasonable juror would have convicted the defendant in light of this new evidence. And at the second stage of proceedings, all well-pleaded facts are taken as true, and that means facts that are not positively rebutted by the record. In his 2014 motion for leave to file a successive post-conviction petition, petitioner offered an affidavit from Dion Hoskin, who averred that he witnessed petitioner's co-defendants, Marvin Alexis and Robert Goodman, commit the murder for which petitioner was convicted. Even assuming arguendo that Hoskin's affidavit was not positively rebutted by the record, which the state offers that it was positively rebutted by the record, as discussed on pages 32 through 37 of our brief, the affidavit nevertheless fails to establish conclusive proof of innocence or preclude his involvement in these crimes. Indeed, to make this affidavit fit with the remaining evidence of the record, this court would have to accept the following version of events. Petitioner first entered the convenience store prior to Alexis and Goodman, which is consistent with his confession. Afterward, Hoskin came upon the scene and began watching, and he watched Alexis and Goodman enter the store, and at this point, Hoskin would not be able to see petitioner because petitioner stated he was on the ground behind the counter. The robbery and the murder then occur, and then Alexis and Goodman flee from the store, at which point Hoskin likewise flees to his friend's place. Then, the Barfords arrive and witness a soul man, presumably petitioner, fleeing from the scene of the crime and running toward Tracy Avenue. Mr. Barford gave chase, but ended up losing the man. The roommates then observe petitioner running past their apartment, and meanwhile, Alexis is either stuck around the scene or left and come back and started speaking to Mrs. Barford. And then after this, the two co-defendants, Mrs. Marvin, Alexis, and Robert Goodman, go back towards Tracy Avenue, where they are seen by the roommates and get into this blue or teal car, and then go back to the crime scene, at which point Alexis is photographed speaking to police. Even accepting this affidavit as true, and excluding petitioner's confession for the sake of argument, the evidence positively demonstrates that this third man was involved, meaning that there was someone in addition to Alexis and Goodman involved in these crimes. And as this court has already acknowledged in prior proceedings, the evidence of petitioner's guilt is overwhelming. His fingerprint was found on the cash box lying next to Mr. Patel's body, and he was in possession of cash that was stained with Mr. Patel's blood. There was also four eyewitnesses who observed this soul man running from the crime scene, meaning, again, that there was a third participant. It is unlikely that Hoskin's testimony would change the verdict in this case in light of this evidence and the remaining evidence of record, which included petitioner's own confession. And contrary to petitioner's position in this appeal, his confession cannot be simply ignored in evaluating Hoskin's affidavit, because we must consider the evidence not in a vacuum, but as a whole. Petitioner nevertheless responds that no eyewitness positively identified him as a third man. However, the Barfords testified that the man's face was obscured by either a mask or a do-rag, which, again, does not preclude his involvement in this crime. He also complains that he has provided alternative explanations for his fingerprint and possession of the blood-stained cash. However, these explanations are positively rebutted by his own confession. And at any rate, they were heard and rejected by the trier of fact at his trial. Finally, petitioner's claim that he confessed under threat was contradicted by the testimony of two rebuttal witnesses, both of whom testified that no threat occurred. But again, the jury heard this information and rejected it at trial. So, taking all of this evidence together, it is unlikely that Mr. Hoskin's testimony would change the result of defendant's trial. And this court should therefore affirm the trial court's decision to dismiss the post-conviction petition at the second stage. Which brings us to the second issue in this appeal. In 2017, petitioner filed his fourth motion for leave to file a successive post-conviction petition, wherein he alleged his sentence violates the Eighth Amendment of the United States Constitution for the reasons espoused in Miller and its progeny. To attain leave to file his petition, petitioner is required to satisfy the cause and prejudice tests outlined in Section 122-1F of the Post-Conviction Hearing Act. However, petitioner has failed to establish either cause or prejudice in this appeal. First, petitioner's claim is barred by Section 122-3 of the Act and he cannot establish cause to overcome that waiver. To establish cause, petitioner had to demonstrate that he could not raise this claim in earlier proceedings. However, petitioner's Miller claim was available to him at the time that he filed his 2014 petition, the petition that we just discussed, and his Miller claim therefore ought to have been included in that petition. Indeed, in People v. Johnson, the First District opined that Miller claims became available to litigants like petitioner when the Illinois Supreme Court decided People v. Davis back in 2014, March of 2014. The Third District, in People v. Walker, concluded that Miller claims became available as early as 2005 when the U.S. Supreme Court decided Roper v. Simmons. In People v. Lesby, the subject of petitioner's latest motion to cite additional authority, the Third District found cause where the claim was raised in the first post-conviction petition following the U.S. Supreme Court's decision in 2012 in Miller. These cases illustrate the fact that petitioner's Miller claim was available to him as early as 2005 and at the latest by March 2014, but at any rate was available to him prior to the filing of his October 2014 post-conviction petition. This argument is therefore barred by Section 122-3 of the Act because it could have and should have been included in that petition. In response, petitioner asserts that this particular claim that his de facto life sentence is unconstitutional was not available until our Supreme Court decided Reyes in 2016. However, Lesby, which concerned a de facto life sentence, made no mention of Reyes, instead basing its cause analysis on the U.S. Supreme Court's decision in Miller. Walker dealt with a discretionary life sentence, yet it found that the Miller claim to be available in 2005 over a decade before our Supreme Court expressly extended Miller protections to discretionary sentences as well as mandatory in Holman. Similarly, the sentence in Johnson was a 40-year discretionary sentence, yet the Court based its cause analysis on the 2014 Davis decision as opposed to Reyes or Holman for that matter. This Court should similarly reject the proposition that petitioner's Miller claim was not available until Reyes because when, quote, extending the Miller protections to de facto and discretionary life sentences, the Illinois Supreme Court was not creating a new substantive rule of law like the U.S. Supreme Court did in Miller. It instead concluded that Miller itself, and by extension the Eighth Amendment, prohibited these sentences already. As such, petitioner's Miller claim became available to him at least in 2012 when the U.S. Supreme Court decided Miller, but at the very latest in March 2014 when Davis was decided. A petitioner, therefore, cannot establish cause because the lack of available precedent is not sufficient to establish cause pursuant to the cause and prejudice test set forth in 122-1. Notwithstanding the lack of cause, petitioner likewise cannot establish prejudice. To establish prejudice, petitioner must prove that he has a meritorious Miller claim, the first step of which is to prove that he received a de facto life sentence because Miller does not apply to sentences less than life. However, petitioner's post-conviction petition failed to make, excuse me, failed to produce enough in the way of documentation to allow the lower court to determine that his sentence was de facto life. The sole factual allegation in his petition on this point is that he, a 17-year-old, received an aggregate sentence of 65 years imprisonment. This sole factual allegation is insufficient to meet the burden of submitting enough documentation to allow the lower court to make that decision. And this is particularly true when, as petitioner notes on appeal, that he is eligible to be released around the age at which the general U.S. population is expected to live. But the fact that petitioner has cited this documentation on appeal does not relieve his duty to present that information to the lower court because in this appeal, we are concerned with the question of whether petitioner established prejudice in his pro se motion by presenting enough to allow the trial court to make that determination as opposed to this court on appeal. And this was petitioner's burden. Contrary to his quarrel with this fact in his reply brief, this is hardly a novel concept. It is well established that petitioners are required to prove that there are as-applied constitutional claims at the trial level. As our Supreme Court explained in Thompson, when presenting an as-applied claim, the petitioner must sufficiently demonstrate the constitutional infirmity in light of the petitioner's individualized circumstances because an as-applied claim is by definition dependent upon those particular circumstances. By failing to even allege information that would allow the trial court to ascertain what his life expectancy can be, the trial court was without enough information to determine whether the 65-year sentence could be served within defendant's lifetime. He therefore failed to meet his burden of proving that he received a de facto life sentence and therefore did not prove that Miller applied at all. However, even assuming that petitioner met this burden, the record indicates that the sentencing court did, in fact, consider petitioner's youth and its attendant circumstances. In this case brief, the state goes through each Miller factor as explained by the Supreme Court in Holman. And in reply, petitioner argues that the trial court... So it seems like your arguments are that... would refute defendant's claim that he would make if he were allowed to file successive petition. But the question for this court right now is should the trial court have allowed him to file a successive petition? And then the arguments you're making, if we said the court should allow, would be then made in front of the trial court. No, Your Honor, because... No? Do I have it backwards? The petitioner is required to prove cause and prejudice. In order to establish prejudice under 122-F, petitioner has to prove that he has a meritorious Miller claim. So in this context, it does seem a little bit backwards looking, but he must overcome that procedural bar in order to obtain leave to file a successive post-conviction petition, which requires him to prove prejudice. So in order to get to those stages, petitioner has to prove that his case and his motion for leave to file a successive post-conviction petition. Turning back to prejudice, the court's comments of sentencing do convey that the court considered petitioner's youth and his attendance circumstances. And this kind of gets into your question to opposing counsel Justice Turner about whether this court can draw inferences from the trial court's findings. And the answer is yes, that's exactly what the Supreme Court did in Peeble v. Holman when it looked at the cold record and considered whether the facts and the evidence that the trial court had before it at that time fit into the Miller factors that the Supreme Court set forth there in Holman and then also in the new sentencing statute. And it concluded that the PSI and the evidence presented at sentencing and the evidence presented at trial was sufficient for the court to make those considerations. The same is here. The same is present in this case. The trial court expressly stated that it considered the information in the PSI and the information before it also allowed the trial court to make a determination that the defendant possessed little to no rehabilitative potential. Specifically, the PSI indicated that petitioner had a pending armed robbery charge at that time. Petitioner had also been involved in several serious rule violations while in jail during the proceedings below and petitioner had a long history of illicit drug abuse and alcohol abuse. The trial court specifically made a finding that petitioner lacked the ability to conform his conduct to the rule of law, which is another way of stating that petitioner had an inability to be rehabilitated. And so looking at the court's expressed comments, we can draw from those comments the fact that the trial court properly considered this factor. And I just would like to end on the fact that there is no rule in Miller, within Miller and its progeny, that the trial court must make an express finding of permanent incorrigibility. Petitioner concedes as much on pages 25 and 13 of his opening and reply brief. And in fact, the potential for rehabilitation and incorrigibility are two sides of the same coin. It's long been established that Illinois sentencing courts are required to consider the potential for rehabilitation when sentencing a defendant and indeed that is a factor under Miller that they are required to consider. However, if a trial court finds that the defendant lacks the potential for rehabilitation, it has necessarily found that the petitioner or the defendant is incorrigible. So there is no express rule that the sentencing court must make a finding with respect to incorrigibility. I believe that those comments are an extension of the requirement that they consider the rehabilitative potential. In sum, the court correctly dismissed petitioner's fourth motion for leave to file a successive post-conviction petition for numerous reasons. Primarily because the petition is barred by operation of 122-3 and then also because the petitioner has failed to meet his burden of proving cause and prejudice. If you were explaining Miller to a lay person or explaining it as a matter of public policy, how would you do so? Your Honor, Miller requires that the sentencing court take into consideration the defendant's youth and its attendant circumstances. The circumstances include... What does that mean? The attendant circumstances... No, the youth. The youth, well obviously the youth is the chronological age of the defendant at the time. Obviously the sentencing court here knew that the defendant was 17 years old when he committed these crimes. It was discussed at several points in the sentencing hearing. It was also included in the PSI. The attendant circumstances refer to the petitioner's home life, certain factors that reflect either immaturity or impetuousness, if I'm saying that correctly. Impetuousness. Yes, that as well, yes. And just the circumstances that reflect poor judgment and the inability to... Well, let's take a step back from the specifics. Yes. And it seems to me the overarching teaching is that we have to recognize that juveniles are different than adults. Absolutely. And that their formative years are not yet over and that the functioning of their brain in conjunction with impulse control and things of that sort is that we just have to look at them differently and it's not fair to sentence them in almost exactly the same way that you sentence an adult offender. Yes, Your Honor. How do you think that the trial court evaluated youth and impetuousness and impulsivity and a general lack of judgment that we attribute to people of this age? Specifically in this case, Your Honor? Yes. Yes, the court specifically noted at sentencing that this was facilitated by others and that is one of the facets of Miller. So the court did take that into consideration. The court also noted his young age and that he had a troubled upbringing. So the court did take these factors into consideration that is reflected in the sentencing decision. Admittedly, the court did not use Miller nomenclature because it occurred well before Miller was ever decided. So that's why Holman requires that we take a backwards-looking view of sentencing hearings and examine this from the cold record to determine whether the trial court had before it the facts that are necessary to consider those Miller factors. And that's what the trial court did here. And this court looks at the trial court's sentence and the comments made at sentencing and the evidence before it. This court will find sufficient information to evaluate those elements. Thank you. Thank you, Your Honors. Rebell? Rebell. As to cause, Your Honor, the actual innocence petition was filed in 2014. The de facto life cases did not even start being in opinions and orders until mid-2015. And the Supreme Court did not extend Miller to de facto life until 2016. So the time Calvin filed his 2014 actual innocence petition, this was not even working its way through the appellate courts. That did not happen until mid-2015. So Calvin, this law was not available to him at the time. And because of that, that cannot be held against him. Once Reyes was decided in 2016, that opened the gates for all of the de facto life litigation that we have now. And moving on, Your Honors, the State argues that Calvin did not present an individualized determination of his life expectancy. The State argues in its briefing that we should look at the health history, possibly genetics, the prison environment where he lives. Those are factors that all must factor in to whether or not he will live past his prison sentence. And, Your Honors, the State sets no case law for that. They don't address any at this point. This is a new standard that they brought up for the first time in appeal and are asking this Court to adopt. That would be judicially inefficient. It would bar most pro se litigants from meeting that standard, getting a doctor, getting possible family testing to see what genetic diseases they might have, looking at the environmental health impact of living in prison. And the State not only does that, but it retroactively applies the standard it created for appeal to Calvin. And it says because he didn't present this, when there was no duty to do so, that he should be barred. And that's just simply incorrect. The point regarding Holman and inferences. The Court did not make an inference that Calvin was permanently incorrigible to people via Holman. At sentencing, the sentencing court specifically said the defendant cannot be rehabilitated. That is exactly what permanent incorrigibility means. He cannot be rehabilitated. There is no inference there. And the Court noted that, I think in paragraph 50 of Holman or 49, when noting its final decision. And, Your Honor, regarding permanent incorrigibility, there doesn't need to be those exact words, but the record must convey that the trial court made that determination beyond all possibility of rehabilitation as in Holman or in Stafford and in Croft by characterizing the defendant as vile and absolutely heartless, where the reasoning clearly indicates that there is no chance for this defendant to ever change his behavior. Calvin is not one of these rare juveniles. He is not. The reasoning in sentencing does not demonstrate that. And unless it does, he requires a new sentencing hearing where the Court can make the proper determination. I'm not arguing right now that Calvin should be released from prison tomorrow. We're just asking for a new sentencing hearing that conforms with Miller and making sure that the proper factors were followed and to make sure that Calvin is. I thought you were asking for the trial court to allow him to file a new petition. Your Honor, that was the original ask. I'm not asking for that. That would be a backup argument. The other request that I made two weeks ago in a motion to cite additional authority and request a new remedy was from the Lusby case from the Third District. They held that where the appellate court determined that the trial court did not properly consider a Miller factor or did not convey a finding of permanent incorrigibility, that further proceedings under the Act are unnecessary because there's nothing more for the trial court to do, and they just remanded for a new sentencing hearing. Your Honor, that is what we're asking for here because we're not asking that Calvin be released. We're just asking that a trial court can review evidence and can make a determination that we cannot, from this record, to make a determination. If he is one of the rarest materials. In order for your client to satisfy the cause and prejudice test at this stage, does your client only have to make a prima facie showing of cause and prejudice to the trial court? Your Honor, he needs to make a showing that his due process rights were violated at the sentencing hearing. And that is shown by the fact that the record is not clear. In fact, it doesn't demonstrate that Calvin is one of these rare juveniles. And because of that, he has established prejudice and, therefore, meets the test. Your Honor, I see that my time is up. Are there any further questions? Thank you, counsel. Okay. Thank you, Your Honor.